# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 50424 | **DATE** | 3/20/2002 |
| **CASE TITLE** | Consumer Portfolio Services, Inc. vs. Martina | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons stated on the reverse Memorandum Opinion and Order, the bankruptcy court's order confirming debtor's Chapter 13 Plan is affirmed.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| X | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| X | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |
| /SEC | courtroom deputy's initials |

number of notices

MAR 21 2002 date docketed

U.S. DISTRICT COURT CLERK

02 MAR 21 AM 10:00

FILED-TWO

Date/time received in central Clerk's Office

3/21/02 date mailed notice

mailing deputy initials

Document Number: 10

# MEMORANDUM OPINION AND ORDER

Consumer Portfolio Services, Inc. ("CPS"), a secured creditor, appeals from an order of the bankruptcy court confirming the Chapter 13 Plan ("Plan") of the debtor, George Martina. This court has jurisdiction under 28 U.S.C. § 158(a)(1).

The Plan provided for the payment of allowed secured claims in full. (CPS Brief, App. p. A-1) On July 2, 2001, CPS filed a proof of claim asserting a secured claim in the amount of $9,239.16. (Id., pp. A-1 - A-7) The collateral for the secured claim was a 1996 Dodge Dakota pickup truck. (Id.) On July 12, 2001, the Chapter 13 trustee, Lydia Meyer, filed an objection to the claim and proposed a modification of the claim which treated it as a secured claim to the extent of $6,162.50 and an unsecured claim to the extent of $3,076.66. (Id. p. A-9) CPS filed an objection to the proposed modification on August 8, 2001, and sought a hearing on its claim. (Id. p. A-10) CPS asserted the NADA retail value of the vehicle was $7,750.00 (significantly less than the $9,239.16 it claimed as secured in its proof of claim), that this was the appropriate value of the vehicle for purposes of the case, and submitted a proposed order allowing its claim as secured in the amount of $7,750.00, with interest thereon at 12%, and the balance of the claim treated as unsecured. (Id.) CPS asserted the trustee had improperly used a valuation "midway between the wholesale and retail values . . ." in violation of existing Supreme Court precedent. CPS's objection asked the court to deny confirmation or in the alternative grant it relief from the automatic stay to allow repossession and sale of the collateral.

On August 24, 2001, CPS's local counsel appeared before the bankruptcy court. When the court asked him if he wanted a hearing he said "Yes, Your Honor. Or we would be perfectly happy to submit a copy of the NADA blue book value." (Id. p. A-20) The court later acknowledged it had ruled on the issue of using midpoint valuation previously but would "be happy to take a closer look at it . . . ." (Id. p. A-22) The court then indicated the parties could file simultaneous briefs if they wished and set the matter for status and decision on September 21, 2001. (Id.) The trustee filed a citation to a prior ruling by the bankruptcy court as its brief. CPS did not file a brief. CPS did not appear at the September 21, 2001, hearing. The bankruptcy court then ruled that using the midpoint valuation as a starting point for valuation was an accepted method of implementing the requirement of Associates Commercial Corp. v. Rash, 520 U.S. 953 (1997) that collateral be valued at replacement value for purposes of determining whether 11 U.S.C. § 1325(a)(5)(B) has been satisfied to allow confirmation over a secured creditor's objection. The court noted, as had the Supreme Court in Rash, that replacement value of a vehicle is not necessarily its retail value. The replacement value would not contain costs often found in a retail value (i.e. warranties, inventory storage, and reconditioning). The bankruptcy court then denied CPS's objection to the modification of claim filed by the trustee. (Id. pp. A-26 - A-28) The Plan was confirmed on October 5, 2001. CPS filed notice of appeal on October 15, 2001, from the order of confirmation "to the extent that such plan does not provide for the payment of the Proof of Claim as filed by [CPS]." (Id. p. A-30)

CPS argues the bankruptcy court erred in using a midpoint between wholesale and retail value for its valuation. However, what the bankruptcy court actually did was use the asserted midpoint as a *starting point* for valuation. In the absence of any other evidence being presented, this starting point became the valuation. CPS did not give the bankruptcy court anything to work with other than a copy of an NADA valuation showing a trade-in value of $5,975 and a retail value of $7,750. (Id. p. A-17) CPS asserts the retail value shown in this NADA valuation should control. However, CPS never provided the bankruptcy court with any evidence or explanation why. In its objection, citing In re: Gates, 214 B.R. 467 (Bankr. D. Md. 1997), CPS simply stated that replacement value is retail value because "that is the price that a consumer would have to pay in the consumer market." (Id. p. A-11, ¶8) However, Gates merely used retail value as the starting point for determining replacement value. Gates, 214 B.R. at 471. CPS filed no brief and did not appear at the hearing on September 21, 2001. Considering the clear statement in Rash that it is left "to bankruptcy courts, as triers of fact, [to identify] the best way of ascertaining replacement value on the basis of the evidence presented," Rash, 520 U.S. at 965 fn. 6, CPS needed to present some basis for the bankruptcy court to adopt its valuation. While it is possible that using a midpoint valuation as a starting point is incorrect, CPS never gave the bankruptcy court any argument to consider. Other courts have used midpoint valuation as a starting point in the wake of Rash. See In re: Getz, 242 B.R. 916, 919-20 (B.A.P. 6th Cir. 2000); In re: Glueck, 223 B.R. 514, 519-20 (Bankr. S.D. Ohio 1998). Rash's abrogation of In re Hoskins, 102 F.3d 311 (7th Cir. 1996) does not require otherwise. Hoskins, in an attempt to eliminate litigation over low value items, had established the midpoint as *the value*. See id. at 315. Rash does not require any particular starting point.

CPS's attempt to distinguish the cases relied on by the bankruptcy court, based on the theory that the interest rate they allowed provided indubitable equivalence despite their purported wrong valuation of collateral, is unavailing. Neither Glueck nor In re: Franklin, 213 B.R. 781 (Bankr. N.D. Fla. 1997) cited by the bankruptcy court addressed this issue. CPS, in its proposed order submitted with its objection to modification, itself provided interest at 12% on its asserted secured value. Nothing CPS submitted would have alerted the bankruptcy court that CPS thought the interest rate to be paid was a factor in valuing the collateral.

A bankruptcy court's findings of fact can be overturned only if clearly erroneous. See Fed. R. Bankr. P. 8013; In re: Morris, 223 F.3d 548, 553 (7th Cir. 2000). The valuation of collateral for purposes of § 1325(a)(5)(B) is a question of fact. See Rash, 520 U.S. at 965 fn. 6 Faced with a choice between adopting the NADA retail value without supporting argument, or following its prior ruling, the bankruptcy court did not commit clear error in following its prior decision to use a midpoint value as a starting point for valuation. See In re: Getz, 242 B.R. at 920.

The decision of the bankruptcy court is affirmed.